Katie R. **WILLIAMS**, Plaintiff,

v.

**UNITED STATES of America,** Defendant.

Civ. No. 855.

United States District Court
E. D. North Carolina, Raleigh Division.

Sept. 26, 1955.

**334**

E. R. Temple, Benson, N. C., Wright T. Dixon, Jr., Raleigh, N. C., for plaintiff.

Julian T. Gaskill, U. S. Atty., Raleigh, N. C., for defendant.

GILLIAM, District Judge.

Katie R. Williams, the plaintiff in this action, is a resident of Johnston County in the Eastern District of North Carolina. She is the mother of Richard Raynor. Raynor was drafted into the Army in 1941. In June 1943 he was killed in North Africa. The complaint alleges that, before going overseas, he was stationed at Camp Bowie, Texas; and that while there he took out a National Service Life Insurance policy in the amount of Ten Thousand Dollars, with his mother, the plaintiff, designated as beneficiary. This action was instituted on February 23, 1955, to recover the proceeds alleged to be due.

The Government moved to dismiss, as allowed by Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. The ground for the motion was that the six-year limitation period prescribed by 38 U.S.C.A. § 445, had run against the plaintiff's right to bring the action. In support of this contention, correspondence between the plaintiff and the Veterans' Administration was put in the form of an affidavit and accompanied the motion. The plaintiff also introduced correspondence as affidavits in opposition to the motion to dismiss. Therefore, the motion to dismiss will be considered as one for summary judgment under Rules 56(b) and (c).

Title 38, U.S.C.A. § 445 states the following:

"In the event of disagreement as to claim, including claim for refund of premiums, under a contract of insurance between the Veterans' Administration and any person or persons claiming thereunder an action on the claim may be brought against the United States either in the United States District Court for the District of Columbia or in the district court of the United States in and for the district in which such persons or any one of them resides, and jurisdiction is conferred upon such courts to hear and determine all such controversies. * * *

"No suit on yearly renewable term insurance shall be allowed under this section unless the same shall have been brought within six years after the right accrued for which the claim is made or within one year after July 3, 1930, whichever is the later date, and no suit on United States Government life (converted) insurance shall be allowed under this section unless the same shall have been brought within six years after the right accrued for which the claim is made: *Provided,* That for the purposes of this section it shall be deemed that the right accrued on the happening of the contingency on which the claim is founded: *Provided further,* That this limitation is suspended for the period elapsing between the filing in the Veterans' Administration of the claim sued upon and the denial of said claim by the Administrator of Veterans' Affairs. * * * *"

Section 445c states the following:

"A denial of a claim for insurance by the Administrator of Veterans' Affairs or any employee or agency of the Veterans' Administration heretofore or hereafter designated therefor by the Administrator shall constitute a disagreement for the purposes of section 445 of this title. * * * "

██ Richard Raynor was killed on June 13, 1943. Death is the contingency that starts the statute to run. See Riley v. United States, 4 Cir., 1954, 212 F.2d 692. Section 445 defines "claim" as "any writing * * * which uses words showing an intention to claim insurance benefits * * *." A claim suspends the running of the six-year limitation until the claim is denied. On December 28, 1943, the plaintiff sent the following letter to the Veterans' Administration. It was received on December 30, 1943.

"Gentlemen:

"My son, Richard Raynor, the above captioned soldier, joined the services of his Country April 19, 1941. He lost his life on June 13, 1943 in the North Africa area.

"He had written me that he had made application for National Service Life insurance but none of these papers have ever been forwarded to me. Will you please make investigation and send me the proper forms on which to make application for insurance?"

██ In United States v. Lockwood, 5 Cir., 1936, 81 F.2d 468, 469 the letter in dispute reads as follows:

" 'This veteran died as a result of injuries received in service, which is acknowledged by the bureau in your letter of the above caption and the undersigned requests that you kindly refer this communication to your insurance division and advise me what the status of this veteran's term insurance was at the time of his death, enclosing the necessary forms, if any, to be prepared by the beneficiary named in the insurance policy, which is Mr. Joseph Richard Lockwood, father.' "

The Court said, at page 470, that the definition of "claim" "may not be made to cover more inquiries as a basis for a later claim, or even expressions of a future wish or desire, if replies are favorable, to claim. So read, nothing falls within it, except a present claim which, though it may be deficient in form, yet asserts in substance a definite and positive claim to benefits under the policy." Mrs. Williams' letter of December 28, 1943 did not constitute a claim which would suspend the running of the statutory limitation.

In February 1944 the Director of Insurance replied to Mrs. Williams' letter. He stated in substance that a thorough investigation revealed that Richard Raynor had not taken out a National Service Life insurance policy. Further inquiries, which are not necessary to be set out, followed. They received the same negative reply. On February 16, 1948, Mrs. Williams signed a formal claim that was received by the Veterans' Administration on February 19, 1948. At that point the limitation was suspended after running for four years, seven and one-half months.

In reply, Mrs. Williams received the following letter which is set out in full:

"March 11, 1948
XC–3,381,502
Raynor, Richard

"Mrs. Katie R. Williams
627 Mechanic Street
Fayetteville, North Carolina

"Dear Mrs. Williams:

"Receipt is acknowledged of your claim for insurance, filed in connection with the case of your son, the late Richard Raynor.

"A search of the records of this Administration as well as those of the War Department shows that your son did not apply for nor was he issued National Service Life Insurance, in view of which the pay-

ment of benefits on this basis is precluded, and your claim has been disallowed.

"Any evidence that you may have tending to show that your son did apply for insurance, or did pay insurance premiums, should be referred to this office, where it will be accorded careful and sympathetic consideration.

"The matter of entitlement to pension will be made the subject of a separate reply.

Very truly yours,
L. Jablinski

F. B. Simms
Chief
Life Insurance Claims
Division"

No further action was taken on the claim until January 27, 1954, nearly six years after the date of the above letter, when Mrs. Williams, by her attorney, requested the Veterans' Administration to reopen the case. Another investigation was conducted. However, no new evidence was uncovered. On December 15, 1954, a letter from E. H. Callahan, Chief of the Dependents Claims Division, again informed Mrs. Williams' attorney that Raynor carried no insurance.

There is no dispute between the plaintiff and the Government about the contents of the letters submitted in support of and in opposition to the motion for summary judgment. With the exception of the 1954 letters that were not included by the Government, they are the same. The dispute is about the legal effect of the letters.

The plaintiff contends that the gap in negotiations from March 1948 to January 1954 did not remove the suspension of the six-year limitation. The Government contends that the letter of March 11, 1948 was a denial of the claim and that the limitation commenced to run again. Three well-reasoned cases present parallel factual situations and sustain the contention of the Government.

In Simmons v. United States, 4 Cir., 1940, 110 F.2d 296 a claim was made in 1927 for payment because of the veteran's total disability. A letter of reply informed the claimant that the policy claimed on had lapsed. This letter was signed by the Chief of the Awards Division. In 1937 the claimant had the case reopened by the Veterans' Administration, and the claim was again denied. Suit was brought in 1939. The court of Appeals for the Fourth Circuit held that the 1927 letter was a denial within the meaning of the statute. The opinion then states at page 299: "While we have rather consistently adhered to a liberal policy on behalf of claimants, we yet must respect the clear statutory limitation upon the Government-granted right to sue the Government. Non-action by a claimant can not be permitted to suspend indefinitely the running of the statutory period of limitation or allowed to encourage attempts to enforce stale claims in the courts."

A rehearing was granted in the Simmons case. The report is found at 4 Cir., 111 F.2d 618. The rehearing was granted for the purpose of considering the authority of the case Rosario v. United States, 1939, 70 App.D.C. 323, 106 F.2d 844 which had not been brought to the attention of the Court in the first hearing. The opinion on the rehearing states in 111 F.2d at page 619: "It is believed that, on its facts, the Rosario case is clearly distinguishable from the case at bar. It should be noted in the Rosario case that the negotiations were really not interrupted in any real sense, except for a lapse of about a year and a half, between the government's letter of November 26, 1929, and the plaintiff's letter of July 16, 1931. After this interruption, the government positively pleaded in August, 1931, that its letter of November, 1929, did not create a disagreement under the statute. * * *

"In any event, the District Court, in the Rosario case, sustained the government's position as to a lack of disagreement on July 13, 1934, and, after this de-

cision, the plaintiff did everything that she could to prosecute her claim as quickly as possible. When the government pleaded the statute of limitations, in her subsequent suit, it was blowing both hot and cold, at the expense of the merits of the plaintiff's claim. Undoubtedly the strong elements of equitable estoppel inherent in such a set of facts strongly tincture the holding in the case.

"In the case at bar, the Simmons case, the government sent a letter to the plaintiff in 1931, which considered in the light of the amendment by Congress in 1935, seems to us clearly to have constituted a denial. Thereafter, the plaintiff, Simmons, did absolutely nothing for a period of five or six years and the government did nothing to indicate that it did not consider the matter closed during this period. It, therefore, seems to us clear that the Simmons case is not similar on its facts to, and thus is not to be controlled by, the Rosario case."

It is the opinion of this Court that the Rosario case has no application to the case before us and that the Simmons case is controlling.

United States v. Kelley, 8 Cir., 1940, 110 F.2d 922, 924, was decided squarely on the authority of the Simmons case. "In this instance the plaintiff took no further action for a period of more than five years [after receiving his denial]. He cannot be permitted thus 'to suspend indefinitely the running of the statutory period of limitation' by nonaction. Simmons v. United States, supra."

In Dyer v. United States, 1946, 81 U.S.App.D.C. 4, 154 F.2d 14, the plaintiff waited for seven years after denial before taking further action. As the Court pointed out in 154 F.2d at page 16: " * * * there is nothing to show that the Bureau, or any of the parties during that interval, considered the claim pending. See Simmons v. United States (on rehearing), 111 F.2d 618. Nor will the subsequent filing of other claims after the statutory period raise the bar to suit. Roskos v. United States, 3 Cir., 130 F.2d 751."

On the clear authority of the foregoing cases we hold that the plaintiff's claim is barred by the six-year limitation of Title 38 U.S.C.A. § 445, for the reason that the suspension clause was not operative from 1948 until 1955. Summary judgment will be granted the defendant, as the pleadings and affidavits show that there is no genuine issue as to any material fact.